CELIA B. WILKINSON, complainant-respondent,

*v.*

GEORGE BRIGGS WILKINSON, defendant-appellant.

[Submitted February term, 1941.  Decided May 20th, 1941.]

*Messrs. Lum, Tamblyn & Fairlie,* for the defendant-appellant.

*Mr. Thomas Brunetto,* for the complainant-respondent.

The opinion of the court was delivered by

THOMPSON, J.

The respondent herein filed her bill and amended bill in the Court of Chancery for separate maintenance and support from her husband and for cancellation of a previous agreement for lump sum alimony. The appeal is from two orders entered on the advice of the advisory master, one denying the husband's motion to strike the bill of complaint, the other directing the payment of alimony *pendente lite* and counsel fees.

The motion to strike was made chiefly on two grounds; (1) that complainant is estopped by reason of a previously executed agreement between the husband and wife for a lump sum payment by him to her, and (2) that the whole matter is *res adjudicata* because of a judgment of the Supreme Court of New York approving the agreement and granting separate maintenance, the parties having been residents of the State of New York at the time of the agreement which is claimed to have been made under the laws of that state, and valid thereunder, while an action by the wife against the husband for separate maintenance and support was pending in the New York court.

From the allegations of the complaint, which must be conceded to be true for the purpose of determining the issue raised by the motion to strike, and from other supporting proof before the advisory master, the history of the litigation between the parties seems to be substantially as follows: The couple having been married for a little over two years the husband abandoned the wife on or about January 2d, 1936, while they were residents of the State of New York, and complainant subsequently brought an action against the husband in the New York Supreme Court for support and maintenance. While the action was pending the parties, each having independent counsel, negotiated an agreement between them whereby the husband was to give the wife a lump sum of $11,000 in full payment for past, present and future support,

and in full of all obligations on his part permanently and for full and complete release of all claim by her against him then or thereafter. This agreement was executed on June 11th, 1937. It is admitted that the $11,000 was paid to the wife. Apparently, this agreement having been worked out independently by the parties and their counsel outside of court, and before and without any trial of the cause pending therein, it was followed by certain findings of fact and conclusions of law by the court dated June 24th, 1937, together with an order and decree of the same date finally adjudging that "this plaintiff be separated from the bed and board of the defendant forever," and ratifying and confirming the agreement of June 11th, 1937, between the parties as "adequate and sufficient and properly and substantially provides for the maintenance and support of the plaintiff herein," &c.

The parties subsequently became residents of New Jersey and the wife instituted an action here for maintenance and support and to set aside the agreement made in New York. She alleges that of the $11,000 received from her husband under the agreement she paid $1,000 to her attorney in the New York litigation and lost or was robbed of $9,000 while on her way from Kingston to New York to deposit that sum in bank; that she is ill and practically destitute; that her husband is worth approximately $200,000; that she did not know at the time she signed the agreement that it released her husband permanently from liability for her support but thought the amount she received was in settlement of a claim she was making against certain of his relatives for annoying her; that the consideration of $11,000 was inadequate. However, these matters do not require any special consideration at this juncture of the case, for defendant's motion to strike, grounded chiefly on his claim of estoppel by reason of the agreement and his claim of *res adjudicata* by reason of the judgment in New York, presents broadly the issue of *res adjudicata* as the one to be determined on this appeal, the issue of estoppel being in our opinion included in the issue of *res adjudicata* as will be hereinafter indicated. The advisory master based his denial of the motion to strike upon conclusions adverse to the appellant on that issue. We pro-

ceed, therefore, to examine that question. The matter seems, as said, to present itself in a two-fold aspect; (1) that of the agreement made by the parties themselves as a contract between them, and its validity as such; (2) that of the judgment of the New York court and the alleged obligation to give it full faith and credit in this state.

It is claimed that the agreement, having been executed in the State of New York by residents of that state, the New York law governed as to its validity. The affidavit of Allan C. Rowe, a member of the New York bar for forty-two years, annexed to the motion to strike the complaint (S. C. 50) states that "under the law of New York State a husband and wife may enter into a separation agreement releasing the husband from his liability to support the wife if the husband makes adequate and sufficient provision for the support of the wife in the agreement. A settlement in gross covering past and future support is valid in New York and is enforceable and binding upon both of the parties, and if a wife enters into such an agreement, she is forever barred thereafter from seeking further support regardless of changed circumstances or conditions." Citing authority for the foregoing statement of the law the affiant first refers to section 51 of the Domestic Relations Law (chapter 19 of the laws of 1909) and formerly section 21 of the Domestic Relation Law of 1896, in effect without substantial change since that date, providing as follows:

"Section 51. *Powers of Married Woman.* A married woman has all the rights in respect to property, real or personal, and the acquisition, use, enjoyment and disposition thereof, and to make contracts with respect thereto, including her husband, and to carry on any business, trade or occupation, and to exercise all powers and enjoy all rights in respect thereto and in respect to her contracts, and be liable on such contracts, as if she were unmarried; but a husband and wife cannot contract to alter or dissolve the marriage *or relieve the husband from his liability to support his wife.* * * *"

The affidavit goes on to say, "Despite the language above underscored, the New York Court of Appeals has declared that the inhibition does not apply where the parties to such a contract have ceased marital relations and are actually living

apart at the time, by agreement or otherwise." *Winter* v. *Winter, 191 N. Y. 462; Carson* v. *Murray, 3 Paige Ch. (N. Y.) 483; Garlock* v. *Garlock, 279 N. Y. 337; Galusha* v. *Galusha 116 N. Y. 435; Greenfield* v. *Greenfield, 161 App. Div. 573 (N. Y.).* From the foregoing it would seem that the parties were competent to make the agreement of June 11th, 1937, under the laws of New York. The consideration appears substantial, it was paid, and the husband claims the wife is incapable of reimbursing him if the contract be set aside, and he also claims there was an additional consideration by the sacrifice of his counter-claim as a defendant in the New York State suit due to its termination without the trial of that issue. However, by reason of what transpired in connection with the attempt of the parties and the court in New York to conclude these matters through the instrumentality of the findings and judgment of the court, the agreement appears to have become linked with or embodied in the court's decree and might be looked upon as so incorporated therein as to stand or fall with the decree and final judgment of the court. That decree and judgment is relied upon by the appellant as establishing the rights of the parties and as the proof that the same are *res adjudicata* and may not be reconsidered in the New Jersey court. The respondent alleges the New York decree and judgment to be a nullity and that it was made and entered in violation of the law of the State of New York at the time. In support of her contention in this respect the respondent cites (S. C. 62) rule 283 relating to civil practice in New York State, as follows:

"No judgment for a separation shall be made of course by the default of the defendant or in consequence of any neglect to appear at the hearing of the cause or by *consent.*"

It is said that the rule above quoted was originally part of rule 76 of the General Rules of Practice, and that rule 76 as it existed in 1908 was construed by the Appellate Division of the Second Department (New York) in *Boyer* v. *Boyer,* reported in *129 A. D. R. 647,* also in *114 N. Y. S. 15,* the opinion being set forth in full at pages 62-65 of the state of case. In that opinion it is held that the quoted rule had "all

the force and effect of a statute  \*  \*  \*  and the court was not at liberty to disregard it." The appellant herein cites no authority to overcome the effect of the rule in question as upheld by the ruling in the *Boyer Case,* and we take it to have been the law of the State of New York at the time of the entry of the questioned judgment and decree.

The recitals of the findings of fact and the order and decree of the New York Supreme Court clearly indicate that the whole determination is in pursuance of the consent of the parties to a separation and incidental money settlement (*Exhibits "B"* and *"C,"* S. C. 41-44). There is no evidence that the issues of the action were tried by the court or any testimony taken upon which the independent judgment of the court was exercised or rights of the parties proved. On the contrary, it would appear that the judgment was based solely upon the independent agreement of the parties and their consent to the judgment as rendered. Under that situation there was presented a question as to whether there was any jurisdiction in the New York court to render the judgment, for it apparently contravened the law of the state which prohibited such a judgment by consent.

However, the proof before the advisory master with regard to the status of the law in New York State as it affected the rights of the parties in this case and the validity of the New York judgment and decree was in the form of affidavits which presented a conflict of opinion as to the effect of the laws of that state and we believe such proof left the subject in such a posture as to justify the retention of the case by the advisory master for final hearing and perhaps further elucidation of the applicable New York law. There also appear in the record certain statements by the complainant wife to the general effect that she did *not* consent to the entry of the New York judgment in the form in which it was finally rendered, although the court's recital in its findings and the implications of its language in the judgment are in conflict with her statement in that respect.

All the foregoing being so, we believe the motion to strike the complaint was properly denied and that the advisory master was correct in retaining the case for final hearing and

further proof. We do not, therefore, decide in advance of the hearing and further proofs any of the issues presented or discussed on this appeal.

We see no reason to disturb the order for the payment of alimony *pendente lite* and counsel fees.

Both of the orders appealed from will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 15.

*For reversal*—None.