## WEAVER v. WHITE, Sheriff.

*(Supreme Court, General Term, Third Department. July 2, 1892.)*

1. PARTNERSHIP EFFECTS—APPLICATION TO INDIVIDUAL DEBTS—EVIDENCE.

Plaintiff indorsed for P. to enable him to get money from a bank to start in business. The business was unsuccessful, and P. formed a partnership with a third person as P. & Co., the new firm assuming all the liabilities of the old firm, including P.'s notes to the bank indorsed by plaintiff. No cash was put in by either member of the firm, which became embarrassed and turned over its entire assets to plaintiff in consideration of P.'s notes, and of the assumption of certain of its debts by plaintiff. *Held*, in replevin against an execution creditor of P. & Co., who had levied on such assets, that P.'s notes indorsed by plaintiff and assumed by P. & Co. were partnership debts of P. & Co., and that the transaction between P. & Co. and plaintiff was not an application of partnership property to the payment of individual debts, and that plaintiff was entitled to recover.

2. FRAUDULENT TRANSFER—SUBSEQUENT CREDITORS.

Defendant's claim having accrued after the giving of the notes in question and their assumption by P. & Co., he could not complain of the transaction between plaintiff and P. & Co. as intended to hinder him in the collection of his debt.

Appeal from circuit court, Clinton county.

Action of replevin by William B. Weaver against Jehiel B. White, sheriff, etc. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

*Shedden & Booth*, (*L. L. Shedden*, of counsel,) for appellant. *Weeds, Smith & Conway*, (*T. F. Conway*, of counsel,) for respondent.

HERRICK, J. This case coming before us to review a judgment entered upon an order nonsuiting the plaintiff, it must be assumed that those facts which the plaintiff's evidence proved or tended to prove are established or found in his favor, and such facts are as follows: Some time in the year 1889, or prior thereto, one Peter O. Weaver entered into business in the village of Morrisonville, Clinton county. To raise money to establish such business, the plaintiff, his father, indorsed a note for him for the sum of $2,000, which note was discounted at the Merchants' Bank of Plattsburgh. Subsequently the plaintiff indorsed another note for him for $500, which was discounted at the same bank. After conducting the business for a year or more, one Loren B. Weaver, a brother, was taken into partnership in the business by Peter O. Weaver. Peter O. Weaver, at that time. was between $5,000 and $6,000 in debt; his stock in trade was estimated to be of the value of $3,000. The articles of copartnership recite that the "party of the first part (Peter O. Weaver) has contributed the sum of two thousand dollars in cash, and the said party of the second part (Loren B. Weaver) has contributed the sum of one thousand dollars in cash," "and this amount is now invested in a stock of goods now in the store of J. Broadwell, in the village of Morrisonville, N. Y., estimated at three thousand dollars." As a matter of fact no cash was actually contributed by either. The fourth article of the copartnership agreement reads as follows: "The parties above named agree to take all the debts and liabilities that now remain unsettled that were contracted by Peter O. Weaver during the past year while in the mercantile business at Morrisonville, and that were incurred for the benefit of the said business, a part of this amount being $200 to J. Broadwell, $2,000 to Merchants' Bank, $500 to Merchants' Bank, $1,000 to Merchants' Bank of Plattsburgh, N. Y., being the amount now vested in the stock of goods which P. O. Weaver & Co. now agree to buy and do take possession of this 10th day of June, 1890, and $3,000 of this amount shall be the capital stock invested in this company by P. O. Weaver and Loren B. Weaver, Jr." The $2,000 and $500 notes were the ones I have already referred to as having been indorsed by the plaintiff. On the 10th day of June, 1890, Peter O. Weaver and Loren B. Weaver, under

the firm name of P. O. Weaver & Co., executed a note for $1,000, which was indorsed by the plaintiff, and discounted at the Merchants' Bank of Plattsburgh, and is the $1,000 note referred to in said fourth article of the partnership agreement. The proceeds of that note were used to pay debts contracted in the business by Peter O. Weaver prior to the formation of the copartnership. All these notes were renewed as they became due by and under the firm name of P. O. Weaver & Co., and indorsed by the plaintiff. The copartnership continued to do business until May 2, 1891, when, becoming embarassed, and the plaintiff refusing to indorse or raise any more money for them, they executed a bill of sale to him of all the goods in the store, at the inventoried price of $3,145. The accounts, valued at $1,200, were also transferred to the plaintiff, making the consideration in all $4,345. This was to be paid by the plaintiff by taking up the $2,000, $1,000, and $500 notes in the bank, and by his agreement to pay certain other debts of the firm, making up the balance of $4,345. The plaintiff subsequently took up the notes in the bank and gave them to Peter O. Weaver, either paying the bank or giving his own notes in place of the ones he took up. The plaintiff carried on the business until about August 25, 1891, during which time he purchased goods and added them to the stock in trade, to the amount of between $400 and $500. On the 25th of August, 1891, the stock in trade was seized, and the store closed, by the defendant, the sheriff of Clinton county, under an execution issued upon a judgment recovered by Edward P. Durant and E. Matthew Carpenter against Peter O. Weaver and Loren B. Weaver for the sum of $932.15; the judgment roll being filed June 5, 1891, and the recovery being had for goods, wares, and merchandise sold to the firm of P. O. Weaver & Co., apparently between November 8, 1890, and April 17, 1891. The plaintiff brought an action in replevin against the defendant to recover possession of the goods, and upon the trial at the close of plaintiff's case a motion for a nonsuit was granted, and from the judgment entered thereon the plaintiff appeals to this court. The case was disposed of in the court below upon the principle that copartnership property cannot be applied to the payment of the individual debts of the copartners until the firm debts are paid. That such is the general rule, there can be no serious question.

The point to be considered here is whether the $2,000, $1,000, and $500 notes held by the Merchants' Bank and indorsed by the plaintiff were copartnership notes or individual notes. The $1,000 note was originally issued as a copartnership note. The $2,000 note was originally issued as the individual note of Peter O. Weaver before the formation of the copartnership; so, also, the $500 note. When the copartnership was formed, it was agreed that it should assume the payment of all these notes, the $1,000 note being issued the same day the firm was, by the terms of the copartnership agreement, to take possession of the store and business. No cash was actually put in by either member of the firm. The new firm simply took possession of the store, stock in trade, and business formerly possessed and carried on by P. O. Weaver, and assumed to pay all the debts that had been contracted by him in that business. The proceeds of the $2,000 note had been used to start him in business, that is, to purchase the stock in trade. The proceeds of the $500 note were also used in the regular course of such business, probably to purchase merchandise. The proceeds of the $1,000 were used also to pay some of the debts contracted by Peter O. Weaver in that business, presumptively in purchasing goods and merchandise, and the goods, wares, and merchandise so purchased were, as we have seen, turned over to the new firm, so that the copartnership had in fact the benefit of all the notes. And the notes so given by the firm, or in renewal thereof, or assumed by it, are valid obligations against the copartnership. *Turner* v. *Jacox*, 40 N. Y. 470; *Arnold* v. *Nichols*, 64 N. Y. 119; *Hannigan* v. *Allen*, 127 N. Y. 639–642, 27 N. E. Rep. 402.

The merchandise in the hands of Peter O. Weaver was liable for his debts. There was nothing inequitable, as against subsequent firm creditors, in making such debts obligations of the new firm, which took the merchandise for the purchase of which the debts were contracted, without paying for it. The indebtedness for which the merchandise was liable was not increased; the new obligations simply took the place of the old. It was not the ordinary case of making firm obligations binding upon the firm property to pay individual debts with. Here, at the time of assuming the two notes and making the other, the firm had no property. The assumption of the two notes and the execution of the other was for the purpose of procuring firm property with which to transact business. In *Menagh* v. *Whitwell*, 52 N. Y. 146, and all kindred cases, there was substantially a donation of firm property to pay the debt of an individual partner without any consideration to the firm. *Bernheimer* v. *Rindskopf*, 116 N. Y. 428, 22 N. E. Rep. 1074. In this case the consideration is ample; the copartnership secures the merchandise which the debts it assumes and pays were contracted to purchase. The new firm took the individual property of Peter O. Weaver and assumed his individual debts at the same time. They became copartnership debts at the same time the property became copartnership property; the one was the consideration of the other. They came into existence as firm debts at the same time the firm came into existence. The indebtedness for which the judgment was obtained, and execution issued thereon to the defendant, was incurred months after the giving and assumption of the notes in question, and hence such notes cannot be regarded as fraudulent as against such judgment creditors, and an appropiation of the firm property to pay such notes is not unlawful. *Nordlinger* v. *Anderson*, 123 N. Y. 544, 25 N. E. Rep. 992. The other indebtedness, in consideration of which the transfer of the property was made to the plaintiff, it is conceded. or at least not controverted here, was copartnership indebtedness. No contention is made but that the transfer to plaintiff was lawful, provided the obligations in question were copartnership obligations and not those of the individual members of the firm. The conclusion at which I have arrived in that respect renders a reversal of the judgment necessary. Judgment reversed, new trial ordered, costs to abide the event. All concur.