WM. L. DOUGLAS ET AL., APPELLANTS, v. GEORGE A. ALDER ET AL, RESPONDENTS.

PARTNERSHIP—WITHDRAWAL—ASSIGNMENT FOR CREDITORS—FRAUD.

In 1890, A. and his son entered into a partnership. On October 1, 1892, the son withdrew, leaving the business to the father, who, on October 18th of the same year made an assignment for the benefit of creditors of the firm without joining the son to the deed of assignment. From the evidence it appears that both believed that the firm was solvent when the partnership was dissolved, that the son was not consulted about the assignment, that he knew nothing of it until a day or two before it was executed, that the transfer from a partnership to an individual business was made to lighten the expenses, that the father assumed the debts, and that, so far

as it affirmatively appeared, no fraud was established and the deed of assignment was valid. *Held*, that it was competent for the partners to agree that the joint property of the partnership should belong to one of them, and if this agreement was *bona fide* and for a valuable consideration, as it seems to have been, it would transfer the whole property to the succeeding partner, and his right thereafter to assign for the benefit of creditors of the firm, in the absence of fraud, even though preferences were made to the wife of the assignor who was a *bona fide* creditor of the firm could not be disputed.

(No. 632.   Decided April 7, 1896.   44 P. R. 706.)

Appeal from the district court of the Third judicial district, Territory of Utah.   Hon. S. A. Merritt, *Judge*.

Action by William L. Douglas et al. against George A. Alder et al.   Hunt & Holbrook and others intervened. There was a judgment of nonsuit, and from an order overruling a motion for a new trial, plaintiff and interveners appeal.   *Affirmed*.

*Jones & Schroeder, Booth, Lee & Gray, Richard B. Shepard, A. N. Cherry,* and *H. O. Shepard,* for appellants.

One partner cannot make an assignment for the benefit of creditors, before the dissolution of the partnership, without the consent of all the partners, and when made without the knowledge or consent of all partners it is absolutely void: *Lieb* v. *Pierpont et al.,* 22 Am. Law Register, 34, annotated case; same case, reported 58 Iowa 469; *Deming* v. *Colt,* 3 Sanford N. Y. Sup. Ct. 284; *Hayes* v. *Heyer, Id.* 293; *Havens* v. *Hussey,* 5 Paige Ch. (N. Y.) 30; *Kirby* v. *Douglas,* 1 Doug. (Mich.) 477; *Dana* v. *Lull,* 17 Vt. 390; *Collier* v. *Hanna,* 17 At. R. (Md.) 390; Bates on Partnership, vol. 1, sec. 338.

The same rule applies to assignments for the benefit of creditors, made after dissolution by one partner only.

*Holland et al.* v. *Drake et al.*, 29 O. S. 441; *Collier* v. *Hanna*, 17 At. Rep. (Md.) 390; *Arnold* v. *Hagerman, Id.* 93; *Decker* v. *Filber*, 3 Watts & S., Penn. 454; *Darby* v. *Gilligan*, L. R. A., Book 6, 740, annotated case; Bates on Partnership, vol. 1, sec. 339, and vol. 2, sec. 688; *Hege* v. *Bolles*, 33 Howard Pr. Rep. 277; *Marsh* v. *Bennett*, 5 McLean, U. S. C. C. 117; *Roop* v. *Herron*, 15 Neb. 73; *Mygatt* v. *McClure*, 3 Head (Tenn.) 495.

Both of the Alders were, at the times of the dissolution of the partnership and the execution of the deed of assignment, insolvent. Such being the fact, then the conveyance of George D. Alder to George A. Alder of all the firm property at the time of dissolution is invalid as against firm creditors, and will be considered as made with intent to hinder, delay, or defraud the firm creditors. *Arnold* v. *Hagerman*, 17 At. Rep. 93; *Phelps* v. *McNeely*, 27 Am. Rep. 378; Bates on Partnership, vol. 1, p. 562; *Menogh* v. *Whitwell*, 11 Am. Rep. 683.

If a wife places in her husband's hands money, that is her separate property, the presumption is that he can use it as his own. *Jacobs* v. *Hesler*, 113 Mass. 157; *Brown* v. *Wood*, 121 Mass. 137; *Clark* v. *Patterson*, 33 N. E. Rep. 589.

*Young, Young & Moyle*, for respondents.

At page 17 of appellant's brief, the proposition is made that the Alders were insolvent at the time of the dissolution of the firm, and also at the time of the assignment, and on that account that the dissolution is void against firm creditors. If this were the law it is not applicable to the facts in this case; for here there is no individual debt preferred, and all of the property goes to the partnership creditors. But the cases cited by appellants to prove this proposition, the court will find upon

examination, do not support it. Appellants have left out one material feature in the proposition, which must be added, to wit: The dissolution must be made *mala fide,* or what is the same thing, "in contemplation of insolvency."

In the case at bar there is no evidence of bad faith, and all the evidence as to contemplation of insolvency is that the firm did not contemplate insolvency. Neither of the partners thought they were insolvent, and the dissolution was made to lessen expenses, so that the firm could better get along.

On the same page of appellant's brief the claim is made and authorities cited to the point that if a wife places money in her husband's hands the presumption is he can use it as his own.

The court will notice that all these cases are from Massachusetts and that Massachusetts does not have the married woman acts that we have in Utah. That may be the law in Massachusetts where a married woman cannot make a contract, as their cases show, and therefore the presumption might arise; but if the law is pertinent at all to this case, such a presumption cannot arise where married women have the right to contract as they have in Utah, and no greater presumption can exist against them than against men. And, further than that, the law is not applicable to the state of facts in our case.

Mrs. Alder did not put the money into the hands of her husband; she loaned it to the firm, with their express agreement to pay for it and took their note for it; and there were witnesses to the transaction, as shown above.

A married woman can be preferred in an assignment for the benefit of creditors by her husband, and so can any other relative, however near. And there is no presumption against its validity. Fraud is never

presumed and must be proved. Burrill on Assignments, sec. 119; *Pettit* v. *Parsons,* 9 Utah 223; *Hill* v. *Cornwall et al.,* 26 S. W. Rep. 541, 544; *Estes* v. *Gunter,* 122 U. S. 454.

MINER, J.:

The testimony, as shown by the record, substantially establishes the following facts: In the month of April, 1890, George A. Alder entered into a verbal partnership agreement with his son, George D. Alder, under the name and style of George A. Alder & Son, and the partnership continued until October 1, 1892. The agreement was that George A. Alder was to put into the business $1,500 or $1,600. George D. Alder was not to put in any capital, but should contribute his time and abilities to the business. The profits, if any, were to be divided, two-thirds to George A. Alder, and one-third to George D. Alder. George A. Alder was allowed to draw out, as living expenses, the sum of $100 to $125 per month, and George D. Alder was allowed to draw $75 and afterwards $100 per month. Defendant Lydia A. Alder is the wife of George A. Alder. It appears that, prior to 1871, her father took up for her, but in her husband's name, five acres of land on the bench, and afterwards sold it, and spent the money, but promised her that she should have a one-third interest in a tract of land on the bench which he owned, in consideration of that previously sold. In February, 1890, Mr. Alder sold this last mentioned tract of land for $2,500. Mrs. Alder joined in the deed at the time of such conveyance. It was agreed between them that, in consideration of the former agreement, and of her dower interest in the land, she should have one-third of the proceeds of this sale, when the money was collected on the mortgage given in part payment thereof. $775 was paid in cash, $125 in commissions, and $1,500 was secured by a mortgage on the land. $791 of this sum

belonged to Mrs. Alder, and such condition was indorsed upon the note given at the time. When the partnership was formed in 1890, Mrs. Alder was requested by both partners to loan them her interest in the $1,500 note and mortgage, and she did so. The mortgage was discounted at the bank, and the firm gave her their note for $791, and the money was placed in the business of the firm, about two months after the business was started. Mrs. Alder had money which she received from her father's estate, and some other means, and from time to time she loaned the firm money with which to increase their stock, and pay the debts, without any knowledge on her part of the firm being insolvent; and in this way she had advanced the firm, with the knowledge of some of the creditors, about $7,326, represented by notes which she took from the firm, and which she held at the time of the assignment. Mrs. Alder and the partnership considered the firm solvent after the dissolution, and up to about the time of the assignment; and Mrs. Alder knew nothing of the business or financial condition of the firm during its existence, but supposed it was solvent. On October 1, 1892, the partnership was dissolved by mutual consent, and a notice of dissolution published in the papers in Salt Lake City. Under such dissolution agreement, George D. Alder gave up all his interest in the business to George A. Alder, the latter taking the assets of the firm, and agreeing to pay all the debts of the firm, neither party contemplating insolvency at the time of the dissolution, the object being to save expenses of two families, on account of the business being poor, and $100 per month that was being paid to George D. Alder. From the time of the dissolution, George A. Alder continued to carry on the business until the assignment was made, and believed the stock was worth $14,000. On October 18, 1892, George A. Alder

made an assignment of all the assets of the firm for the benefit of the creditors of the firm to the defendant, Samuel R. Parkinson, assignee. Preferences were made —First, those entitled to preference by law; second, the costs and charges of administering the trusts; third, the note of Mrs. Alder for $2,500, past due; fourth, two notes of the Union National Bank for $2,000; fifth, three notes to Mrs. Alder for $1,826, including the note for $791 previously mentioned; sixth, three claims, amounting to $366.25, to several creditors; seventh, to pay all the creditors not mentioned above. George D. Alder knew nothing of the assignment until a day or two before it was made, and did not then assent or dissent, but made no objection to it. The total indebtedness of the firm was $12,300. The total assets, invoiced at 10 per cent. below cost and freight, amounted to $9,083.67. The stock sold for $7,431.77. The assignee paid off the first note of $2,500, due Mrs. Alder, and the $800 note to the bank, in accordance with his trust, at which time he was enjoined from making further payments by this proceeding. Shortly afterwards, however, by consent of the plaintiffs, he paid the balance due the bank. The plaintiffs and interveners allege, in their complaint, that the preferences to Mrs. Alder and the bank were for individual notes of the members of the firm, and were fraudulent and void, and that the assignment was fraudulent and void, and made to cheat and defraud the creditors of the firm, and asked to have the assignment decreed void, and the property distributed to the creditors of the firm. After the plaintiffs introduced their evidence, the defendants asked for a nonsuit, on the ground that the evidence would not justify a verdict for the plaintiffs. The court granted the nonsuit and rendered judgment in favor of the defendants, and against the plaintiffs and

interveners for costs. This appeal is taken from the order overruling the plaintiff's motion for a new trial.

The appellants now contend that the assignment was void, because George D. Alder, the former partner, did not join in the assignment, under the facts as stated, and claim that the preferences to Mrs. Alder were for individual debts of George A. Alder. The testimony, as stated herein, tends to establish the fact that George D. Alder had transferred all his interests in the firm assets to his partner, 18 days before the assignment, in good faith, both of whom believed at the time that the partnership was solvent; that notice of the dissolution was printed in the papers; that, while George D. Alder was not consulted about the assignment, yet he knew of the contemplated assignment a day or two before it was executed, and made no objections thereto; that this transfer was made to lighten the expenses of the business, George A. Alder assuming the debts of the firm, and no fraud being established, so far as affirmatively appears from the testimony given on the trial. Under the facts as established, we cannot concur in the position taken by the appellants. In this state, assignments for the benefit of creditors are governed by the common-law rules. These proceedings were not taken until some considerable time had elapsed after the dissolution and assignment. The joint creditors of the firm had no specific lien upon the property of the firm until their claims were established by a judgment, and an execution levied upon the property. At the time of the voluntary assignment, it was competent for the partners to agree that the joint property of the partnership should belong to one of them; and, if this assignment was *bona fide,* and for a valuable consideration, as it seems to have been, it would transfer the whole property to the succeeding partner, and his

right thereafter to assign for the benefit of creditors of the firm, even though preferences were made, could not be disputed. In the case of *Fitzpatrick* v. *Flannegan*, 106 U. S. 648, 1 Sup. Ct. 369, the court held: "The legal right of a partnership creditor to subject the partnership property to the payment of his debt consists simply in the right to reduce his claim to judgment, and to sell the goods of his debtors on execution. His right to appropriate the partnership property specifically to the payment of his debts, in equity, in preference to creditors of an individual partner, is derived through the old partner, whose original right it is to have the partnership assets applied to the payment of partnership obligations. And this equity of the creditor subsists as long as that of the partner, through which it is derived, remains; that is, so long as the partner himself retains an interest in the firm assets as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce, through it, the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration." The court said, in *Case* v. *Beauregard*, 99 U. S. 125, in illustrating its position: "It is, therefore, always essential to any preferential right of the creditors that there shall be property owned by the partnership when the claim for preference is sought to be enforced. Thus, in *Ex parte Ruffin*, 6 Ves. 119, where, from a partnership of two persons, one retired, assigning to the other the partnership property, and taking a bond for the value, and a covenant of indemnity against the debts, it was ruled by Lord Eldon that the joint creditors had no equity attaching upon partnership effects, even remaining in specie. And such has been the rule generally accepted ever since, with the single qualification that the assignment of the retiring partner is not *mala fide*. The joint estate is converted into the

separate estate of the assignee by force of the contract of assignment, and it makes no difference whether the retiring partner sells to the other partner or to a third person, or whether the sale is made by him or under a judgment against him. In either case, his equity is gone. These principles are settled by very abundant authorities." The same doctrine is held in *Huiskamp* v. *Wagon Co.*, 121 U. S. 310, 7 Sup. Ct. 899; *Fitzpatrick* v. *Flannegan*, 106 U. S. 641, 1 Sup. Ct. 369; *Case* v. *Beauregard*, 99 U. S. 119; *Ex parte Ruffin*, 6 Ves. 119; *Baker's Appeal*, 21 Pa. St. 76; *Kimball* v. *Thompson*, 13 Metc. (Mass.) 283; *Emerson* v. *Senter*, 118 U. S. 3, 6 Sup. Ct. 981; Story, Partn. § 358; 3 Kent Comm. 65; Bates, Partn. 339, 558.

George D. Alder, as well as the property of the firm, had ceased to belong to the partnership before the interposition of the court had been asked, and the property had become the property of George A. Alder, and by him transferred to an assignee, in trust for all the creditors of the old firm. The making of the assignment, and the giving of the preferences to certain partnership creditors, there being no statute forbidding it, was not an illegal exercise of the power George A. Alder had by virtue of his relation to the parties concerned, as shown by all the testimony in this case. The creditors for whose benefit the assignment was made were the creditors of the firm, and not the individual creditors of certain members of the firm. The notes given by Mrs. Alder to the firm were for money advanced to the firm by her in good faith, and used by the firm during its existence, for its benefit, and for the benefit of the creditors of the firm. No concealment, fraud, or unfair dealing is shown on the part of the preferred creditors with the firm, or either member of it. The transaction surrounding the dissolution of the partnership is explained by the fact that the son had placed no capital in the business, except what was bor-

rowed by the firm, and by allowing him to draw out would save the business $100 per month expenses. It also appears that both partners considered the partnership solvent at the time of the dissolution. The contention on the part of the appellants is largely based upon a state of facts that we do not find to exist. In passing upon this case, we do so upon the facts stated in this opinion as furnished by the record. While some of the facts taken alone, such as the making of the assignment after the dissolution, and the fact that the assets did not exceed the liabilities, might look somewhat suspicious, yet, in the light of all the evidence, explaining the action of the parties in the matter, we cannot presume fraud existed, either in the assignment or preferences made, without more substantial proof than this record presents. *Bernheimer* v. *Rindskopf*, 116 N. Y. 428, 22 N. E. 1074; *Nordlinger* v. *Anderson*, 123 N. Y. 544, 25 N. E. 992; *Mensing* v. *Atchison*, (Tex. Civ. App.) 26 S. W. 509; *Wiggins* v. *Blackshear*, (Tex. Sup.) Id. 939.

The nonsuit was properly granted. Upon the record we find no error. The judgment of the court below is affirmed, with costs.

ZANE, C. J., and BARTCH, J., concur.